UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNE McCORMICK,<br><br>   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO SHERIFFS DEPUTIES; DOES 1-10,<br><br>   Defendants. | Case No.:  20cv1753 JM (AGS)<br><br>**ORDER ON MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

The County of San Diego ("the County) moves to partially dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 13.)  The motion has been fully briefed and the court finds it suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the below reasons, the motion is **DENIED IN PART** and **GRANTED IN PART**.

**I.   BACKGROUND**

In her FAC, Plaintiff alleges that on the morning of January 11, 2020, deputy sheriffs came onto her property and asked to speak with Ms. Clark, the girlfriend of Plaintiff's tenant.  (FAC ¶ 9.)  The Deputies were there to perform a "Fourth Waiver compliance check" on Ms. Clark, a parolee.  (*Id.*)  Plaintiff did not know why the Deputies were asking to speak with Ms. Clark, and the Deputies did not tell her why.  (*Id*.)  Plaintiff led the

deputies by foot down the road, up the driveway, up the walkway, and up the stairs to see if the front door was unlocked. (¶ 10.) According to Deputy Norby's report, Detective Castro and Deputy Norby each advised her not to enter her home. (*Id.*) Plaintiff denies that any such warning or command was given. (*Id.*)

As she was halfway inside the open front door, Deputy Norby, without warning, grabbed her left arm and forcefully pulled her backward into the door jam, then forced her down to the ground. (¶ 11.) As Deputy Norby handcuffed her, Deputy Krawczyk pulled her head back by her ponytail and slammed her head onto the hardwood floor. (*Id.*) She was placed under arrest for violating California Penal Code § 148(a)(1). (*Id.*) The San Diego County District Attorney's Office later declined to issue charges. (*Id.*)

Plaintiff brings claims for: (1) false arrest under federal law; (2) excessive force under federal law; (3) negligence; (4) false arrest under California law; (5) battery; and (6) violation of the Bane Act, California Civil Code § 52.1(b). Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs. The County moves to dismiss Plaintiff's claims for false arrest, as well as her Bane Act claim. (Doc. No. 13.) The County also requests the court take judicial notice of body worn camera video footage of the arrest, as well as some still frames of the video. (Doc. No. 13-2.)

**II.     LEGAL STANDARDS**

In deciding a motion to dismiss a complaint under Rule 12(b)(6), the court must "take all allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court must also draw all reasonable inferences in favor of the claimant. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers,*

*Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In pursuing a motion to dismiss, the defendant bears the burden of showing the plaintiff has failed to state a plausible claim. *See Shay v. Apple Inc.*, Case No.: 20cv1629-GPC(BLM), 2021 WL 75690, at *3 (S.D. Cal. Jan. 8, 2021).

### III.   DISCUSSION

#### A.   Body Camera Video

As an initial matter, the County requests the court take judicial notice of body camera video and audio of the incident leading to Plaintiff's arrest ("the recording"), as well as some still frames of the video, under Rule 201 of the Federal Rules of Evidence. (Doc. No. 13-2 at 1.) The County also argues the recording is incorporated by reference into the FAC. (*Id*. at 2-3.) Plaintiff does not oppose judicial notice of the recording, but opposes judicial notice of the still frames because "videos are more authentic" and photographs "lack the necessary context." (Doc. No. 14 at 8 n.1.)

Judicial notice permits a court consider an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. Courts "are permitted to consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

In cases where the plaintiff objects to the court's consideration of police body camera or dashboard camera video in deciding a motion to dismiss, district courts consistently decline, under *Sams*, to consider the video under the incorporation by reference doctrine. *See Estate of Smith v. City of San Diego*, Case No.: 16-cv-2989-WQH-MDD, 2018 WL 3706842, at *3 (S.D. Cal. Aug. 3, 2018) (plaintiff argued the complaint did not necessarily rely on numerous videos of a police shooting submitted by the defendants); *Lee v. City of San Diego*, Case No.: 18cv0159 W (BLM), 2019 WL 117775, at *5 (S.D. Cal. Jan. 7, 2019) (plaintiff argued the complaint did not refer to the videos and that his claims did not depend on the videos); *Brown v. City of San Diego*, Case No.: 3:17-cv-00600-H-WVG, 2017 WL 3993955, at *2 (S.D. Cal. Sept. 11, 2017) (plaintiff contested the video's authenticity by arguing that he did not know if the video was all the video in the case and whether the video had been edited).

Other district courts have considered police body worn camera and dash board camera recordings on motions to dismiss, despite the plaintiff's objection, without converting the motion into a motion for summary judgment *See Muhaymin v. City of Phoenix*, No. CV-17-04565-PHX-SMB, 2019 WL 699170, at *3 (D. Ariz. Feb. 20, 2019) (considering multiple videos, despite the plaintiff's objections to their authenticity, because the defendant officers submitted an affidavit stating that the videos were complete, unredacted, and unedited); *Covert v. City of San Diego*, Case No.: 15cv2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017) (considering the video despite the plaintiff's argument the camera was turned off during the moment of alleged excessive force because the plaintiff did not assert the video was altered or tainted in anyway); *see*

*also Rosales v. County of San Diego*, Case No.: 19-CV-2303 JLS (LL), 2021 WL 37723, at *17 (S.D. Cal. Jan. 5, 2021) (relying on *Covert* to decline defendant's motion to strike video evidence where the defendants challenged authenticity for the first time in their reply); *Lihosit v. Flam*, No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *4 (D. Ariz. May 17, 2016) (considering video where the plaintiff's counsel conceded the images and sounds were accurate).

Here, as noted above, Plaintiff does not object to the County's request to take judicial notice of the recording, or to view it as incorporated into the FAC. Additionally, in her FAC, Plaintiff "explicitly denies that . . . . warnings or commands [to stay outside her home] were given, as is amply demonstrated by the Body Worn Camera footage." (FAC ¶ 10.) Plaintiff's lack of opposition, combined with her reference and at least partial reliance on the recording in the FAC, are sufficient grounds for the court to consider the recording in deciding the County's motion to dismiss under Rule 12(b)(6).[1] *See Lihosit*, 2016 WL 2865870, at *3 (considering video and transcript of the plaintiff's arrest because, under *Sams*, the complaint "necessarily relies on the circumstances surrounding [the plaintiff's] arrest" and "[w]hile these are not 'documents' in the traditional sense, they are essential to a full understanding of the events underlying [the] complaint, and [the plaintiff] does not dispute their authenticity"). Accordingly, the court will consider the recording and audio of the body camera recording as though it is part of the FAC. *See Khoja*, 899 F.3d at 1002.

---

[1] In its request, the County does not specifically recognize or discuss the distinction between judicial notice and the incorporation by reference doctrine. (*See* Doc. No. 13-2 at 5.) Based on the cases addressing consideration of body worn camera video, it does not appear necessary, as the County suggests, that the court take judicial notice of the recording that is incorporated by reference into the FAC. Accordingly, although the court will consider the recording in deciding the instant motion, the County's request to take judicial notice of the recording, and still frames thereof, is DENIED AS MOOT. Additionally, Plaintiff's objection to the court taking judicial notice of the still frames is SUSTAINED.

### B. False Arrest

Plaintiff brings claims for false arrest under both federal and state law. (FAC ¶¶ 15-19, 29-33.) The County argues that Plaintiff's claims fail because probable cause existed to arrest Plaintiff for violating California Penal Code § 148(a)(1). (Doc. No. 13-1 at 4-8.) For the below reasons, Plaintiff sufficiently pleads plausible claims for false arrest.

#### 1. Probable Cause

"If an officer has probable cause to believe that an individual has committed even a minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). An unlawful arrest claim under 42 U.S.C. § 1983 is cognizable if the arrest was without probable cause. *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "The determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the arrest." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (citations, quotation marks, and alterations omitted). "The evidence need support 'only the probability, and not a prima facie showing, of criminal activity.'" *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

Similarly, under California law, "[a] peace officer may . . . . arrest a person whenever . . . . [t]he officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence." CAL. PENAL CODE § 836(a)(1); *see also Johanson v. Dep't of Motor Vehicles*, 36 Cal. App. 4th 1209, 1216 (1995) ("A warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence."). "Reasonable or probable cause means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. Reasonable and probable cause may exist although there may be some room for

doubt." *People v. Mower*, 28 Cal. 4th 457, 473 (2002) (citations and internal quotation marks omitted).

### 2. Section 148(a)(1)

The County argues Plaintiff's false arrest claims fail because probable cause existed to arrest Plaintiff for violating California Penal Code § 148(a)(1), which makes it a misdemeanor to "willfully resist[], delay[], or obstruct[] any . . . . peace officer . . . . in the discharge or attempt to discharge any duty of his or her office or employment[.]" The elements of a § 148(a)(1) violation are "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (2002). "The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence." *Id.*

### 3. The Recording

The recording shows that deputies spoke with Plaintiff for a period of time in her driveway. Plaintiff stated, "no, we're good, you can come in." Plaintiff also stated, "is it going to be gnarly" and a deputy stated something unintelligible. Plaintiff responded, "well, "I'm not going to wait outside my house" and something to the effect of "but I wasn't planning on going in there this second." The deputies inquired about whether the door was locked and how many adults were in the house. As part of her response, Plaintiff stated "she's in her room." Plaintiff led multiple deputies up the driveway to her front door. As they were walking up the driveway to the front door, Plaintiff was told "just wait out here" and "you're going to have to stay out here." When Plaintiff reached the front door, she opened it and went inside. After crossing the threshold, Deputy Norby, who was immediately behind her, grabbed her arm and stated "ma'am, you're going to have to stay out here" and "no, you're going to stay out here," to which Plaintiff replied, "this is my home." Plaintiff immediately moved or was moved by Deputy Norby away from the

doorway. Plaintiff stated, "I'm going to show you, it's right down that hall to the left." Plaintiff also stated, "I'm not going down there." The other deputies, including the one recording with his body camera, proceeded with the compliance check and within approximately one minute located and detained two individuals in a bedroom, one of whom was Ms. Clark.

### 4. County's Arguments

The County argues that probable cause to arrest Plaintiff for violating § 148(a)(1) existed because "[t]hese deputies were acting within the course and scope of their duties as law enforcement officers, as they were performing a 'Fourth Waiver compliance check' on a parolee," and Plaintiff "resisted, delayed, or obstructed" the deputies because "[s]he failed to obey their numerous commands not to enter the house" and "pulled away from Deputy Norby in order to enter." (Doc. No. 13-1 at 6.) The County further argues that "she obstructed and delayed the deputies' ability to contact the parolee without interference from other parties," and "[h]er actions limited their ability to get through the door, required two deputies to deal with the Plaintiff instead of the parolee, and may have prematurely alerted the parolee to the law enforcement presence." (*Id.* at 7.)

### 5. Analysis

Clearly, the recording shows that Plaintiff, for whatever reason, did not comply with the verbal command to remain outside her home.[2] The body camera recording also reveals that Plaintiff may have "pulled away" from Deputy Norby when he grabbed her arm. Deputy Norby was "delayed," and perhaps "obstructed," from otherwise participating in the compliance check because he was preoccupied with arresting Plaintiff. Any other

---

[2] In her FAC, "Plaintiff explicitly denies that such warnings or commands were given, as is amply demonstrated by the Body Worn Camera footage." (FAC ¶ 10.) In her opposition, Plaintiff argues that "[i]f [she] did not hear any commands, as the video demonstrates and the aforementioned averment implies, then any action she took was not willful, and probable cause was therefore lacking." (Doc. No. 14 at 17.)

8

20cv1753 JM (AGS)

deputy that assisted in the arrest prior to the completion of the compliance check would have been similarly "delayed" and possibly "obstructed."

When viewed in the light most favorable to Plaintiff, however, the totality of circumstances known to the deputies at the time of the arrest, as alleged by Plaintiff and as shown in the recording, sufficiently support the plausibility of Plaintiff's claims for false arrest based on a lack of probable cause that Plaintiff violated § 148(a)(1). In other words, at this early stage in the litigation, Plaintiff sufficiently alleges that Deputy Norby and any other arresting officer lacked a reasonable belief or strong suspicion that Plaintiff willfully resisted, delayed, or obstructed a deputy when he was engaged in the performance of his duties, and the County does not sufficiently show otherwise.[3]

### a.  Resistance

With respect to whether Plaintiff "resisted" any of the deputies when engaged in the performance of their duties, she did not necessarily resist the deputies in performing the compliance check. Rather, her actions can be reasonably viewed as resisting the commands to remain outside her home while the deputies performed the compliance check. Outside of her failure to comply with the commands, Plaintiff assisted the deputies by: (1) confirming that Ms. Clark was inside the house; (2) informing them where she was located in the house; (3) telling them "you're good, you can come in;" (4) promptly escorting the deputies to her front door and opening it; and (5) once inside, and while engaged with Deputy Norby, Plaintiff said "I'm going to show you, it's right down that hall to the left." While it is reasonable to infer the deputies wanted Plaintiff to remain outside for her safety, and also to prevent her from warning Ms. Clark,[4] based on Plaintiff's prior cooperation, it is not reasonable to infer that Plaintiff, if allowed to accompany the

---

[3] Plaintiff does not dispute that she knew the deputies were peace officers.

[4] It is also reasonable to infer the deputies' desire to avoid "prematurely" tipping-off Ms. Clark about to their presence was based, at least in part, on a desire to minimize the time Ms. Clark had to possibly flee or prepare to violently resist the deputies.

deputies into her home, would have attempted to warn Ms. Clark given the totality of circumstances. Finally, the County's argument that the deputies were concerned that Plaintiff might have "prematurely" alerted Ms. Clark to their presence is at least somewhat undermined by the fact that, soon after entering the house, the deputies repeatedly announced themselves before entering any of the rooms.

Additionally, when the FAC and recording are viewed in the light most favorable to Plaintiff, it is plausible that Plaintiff did not in fact "pull away" from Deputy Norby when he grabbed her arm as she entered the door. As alleged by Plaintiff, it was Deputy Norby that used force against her. (*See* FAC ¶ 11 ("As she was halfway inside the open front door, intending to allow the deputies entry, Defendant Norby, without warning, grabbed her left arm and forcefully pulled her backward into the door jam, and then forced her down onto the ground.").) Based on the recording, Plaintiff's response to Deputy Norby's use of force essentially consisted of her turning around, then both Plaintiff and Deputy Norby quickly moved away from the door opening and out of view of the body camera. It is not clear if Plaintiff "pulled away" from Deputy Norby, or whether he pushed her. In due course, it may be determined that Plaintiff did in fact "pull away" from Deputy Norby in order to "resist" something he or another deputy was doing. Without the benefit of discovery, however, including the perspectives of Plaintiff and Deputy Norby, it remains plausible Plaintiff was not physically resisting Deputy Norby when he was engaged in the performance of his duties.

### b. Delay and Obstruction

With respect to whether Plaintiff "delayed" or "obstructed" any of the deputies when engaged in their duties, Plaintiff's noncompliance did not, per se, necessarily delay or obstruct the deputies in performing the compliance check. As the recording confirms, Plaintiff immediately opened the front door to let the deputies inside. When Deputy Norby grabbed Plaintiff, both Deputy Norby and Plaintiff quickly moved aside. There is no indication that Plaintiff delayed the other deputies in entering the home by intentionally or

unintentionally blocking the deputies' entrance through the open door.[5] After entering, the other deputies located and detained Ms. Clark within approximately one minute. The County does not explain what a successful compliance check entails, and other than Deputy Norby's unavailability to join the other deputies in searching for Ms. Clark, the County does not specifically identify anything about the compliance check that was impeded.

### c.     Duty

With respect to whether Plaintiff resisted, delayed, or obstructed a deputy "when the officer was engaged in the performance of his or her duties," *see Muhammed C.*, 95 Cal. App. 4th at 1329, the County provides little, if any, support for its implied argument that the deputies were delayed and obstructed when they "were acting within the course and scope of their duties as law enforcement officers, as they were performing a 'Fourth Waiver compliance check' on a parolee." (Doc. No. 13-1 at 6.) The only cases cited by the County in support of its argument are *Colten v. Kentucky*, 407 U.S. 104, 109 (1972) and *Mam v. City of Fullerton*, No. 8:11-CV-1242-JST, 2013 WL 951401, at *4 (C.D. Cal. Mar. 12, 2013), both of which are distinguishable because they involved commands by police to move away from the immediate vicinity of an arrest or traffic stop.[6]

Here, Plaintiff was ordered to remain outside her own home while deputies attempted to conduct a compliance check on a parolee who Plaintiff apparently confirmed

---

[5] The County's argument that "[h]er actions limited [the deputies'] ability to get through the door" is contradicted, at least to some degree, by the video. Based on the recording, and without the benefit of further factual development, perhaps it could be argued that the physical altercation that occurred between Plaintiff and Deputy Norby in the threshold delayed the other deputies from proceeding inside for, at most, one to three seconds.

[6] *Colton* involved the constitutionality of Kentucky's disorderly conduct law under which an officer ordered a third party claiming an interest in the outcome of a traffic stop to "move on." 407 U.S. at 109. Thinking the car would be towed, the plaintiff wanted to arrange transportation for his friends riding in the vehicle. *Id*. at 106-07. In *Colton*, however, the plaintiff refused repeated commands to stop engaging the officer in conversation while he was conducting the traffic stop, and to move away from the scene. *Id*. at 109.

was inside the home. As noted above, the County offers no explanation as to what a "Fourth Waiver compliance check" entails. The County also provides no support concerning the deputies' authority or "duty" to perform compliance checks, nor does the county cite or rely upon cases where law enforcement officers may lawfully control or limit a third party's physical movements when searching premises or conducting an investigation. *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) (handcuffing occupants of a premises for two to three hours while executing a search warrant is reasonable); *Maryland v. Wilson*, 519 U.S. 408, 413-414 (1997) (officers may order passengers out of a vehicle during a vehicle stop); *Michigan v. Summers*, 452 U.S. 692 (1981) (officers executing a search warrant for contraband have authority to detain the occupants of the premises while a proper search is conducted in order to prevent flight, minimize risk of harm to the officers, and facilitate the orderly completion of the search); *Dawson v. City of Seattle*, 435 F.3d 1054, 1066, 1069 (9th Cir. 2006) (while executing a search warrant for evidence, as opposed to a search for contraband, officers may detain tenants of a boarding house and prohibit them from smoking or using the bathroom unattended).

Finally, the County does not attempt to reconcile or apply the multitude of cases addressing whether the failure to obey police commands constitutes probable cause to make an arrest under § 148(a)(1). *See, e.g.*, *Lull v. Cty. of Sacramento*, No. 2:17-cv-1211-TLN-EFB PS, 2020 WL 5495279, at *3 (E.D. Cal. Sept. 11, 2020) (refusing to answer officer's questions or provide identification while plaintiff was loading a kayak onto his car, and attempting to ignore the officer by walking around him, was not probable cause for arrest), *report and recommendation adopted*, No. 2:17-cv-01211-TLN-EFB, 2020 WL 5943980 (E.D. Cal. Oct. 7, 2020); *Logan v. L.A. Airports Police Dep't*, Case No. CV 17-2971 PA (JDEx), 2018 WL 6136138, at *5 (C.D. Cal. July 23, 2018) (plaintiff pled plausible claim for unlawful arrest for allegedly refusing to sign a citation); *Quintero v. City of Escondido*, Case No.: 15-cv-2638-BTM-BLM, 2017 WL 4005345, at *9 (S.D. Cal. Sept. 11, 2017) (plaintiff's refusal to step outside his apartment while holding his child, and adjusting his feet when an officer grabbed his arm, was not probable cause to arrest);

*see also Gonzalez v. City of Huntington Beach*, No. 19-56046, 2021 WL 321070, at *4 (9th Cir. Feb. 1, 2021) (Kennelly, J., dissenting) (opining that a reasonable jury could find that probable cause did not exist to arrest plaintiff for disregarding command not to go into a house because the video and audio evidence reasonably may be viewed as depicting a consensual encounter); *Bennett-Martin v. Plasencia*, 804 F. App'x 560, 565 (9th Cir. 2020) (Marbley, J., dissenting) (opining that refusing to hang up a cell phone is not probable cause for arrest because "a violation of section 148(a)(1) requires more than mere noncooperation with an officer's orders") (citing *People v. Quiroga*, 16 Cal. App. 4th 961 (1993)); *Maric v. Alvarado*, 748 F. App'x 747, 750 (9th Cir. 2018) (refusing command by officers investigating possible domestic violence to step outside one's own home was not probable cause for an arrest because it was clear the plaintiff's wife and child were unharmed, and because the defendants did not "cite any law which indicates that a person must acquiesce to a police officer's request that he leave his own home"); *In re Gregory S.*, 112 Cal.App.3d 764, 778 (1980) (a violation of § 148 may occur where an officer "had the legal right . . . . to detain," the defendant was "aware of the officer's desire" to detain him, and the defendant did not "permit himself to be detained").

In sum, given the "duty" element for § 148(a)(1) violations, the issue of whether probable cause existed to arrest Plaintiff for resisting, delaying, or obstructing any of the deputies may depend, at least in part, on (1) whether, under the circumstances, the deputies had authority to command Plaintiff to remain outside her home, and (2) whether the commands for Plaintiff to remain outside her own home can be viewed independently from the deputies' apparent duty to conduct the compliance check. *See Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) ("For a § 148(a)(1) conviction to be valid, a criminal defendant must have 'resisted, delayed, or obstructed' a police officer in the *lawful* exercise of his duties. In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer.") (emphasis in original); *Taylor v. City of Calaveras*, Case No. 1:18-cv-00760-BAM, 2020 WL 7406527, at *11 (E.D. Cal. Dec. 17, 2020) (finding that under *Smith*, "[i]t is not a crime to resist

unlawful orders."). Based on the allegations, the recording, and the argument put forth by the County, this court cannot state, as a matter of law, that Plaintiff willfully resisted, delayed, or obstructed the deputies "when the [deputies were] engaged in the performance of [their] duties," *Muhammed C.*, 95 Cal. App. 4th at 1329, or when the deputies were "in the discharge or attempt to discharge any duty of [the deputies'] office or employment," CAL. PENAL CODE § 148(a)(1).[7] Although it may ultimately be determined that probable cause existed to arrest Plaintiff for violating § 148(a)(1), at this stage in the litigation, Plaintiff has stated plausible claims for false arrest under both state and federal law.

### C. Bane Act Violation

The County also argues Plaintiff's Bane Act claim fails because "Plaintiff does not allege sufficient facts showing any deputy had the intent required for a Bane Act violation – a criminally specific intent to violate Plaintiff's right to freedom from wrongful detention." (Doc. No. 13-1 at 9.) The County argues "the specific intent required is disproven by the facts" because "[t]he video footage shows no indication that the deputies acted with criminal intent towards Plaintiff, and reveal only the desire for Plaintiff to not interfere with their contact with the parolee." (*Id.* at 10.)

The Bane Act creates a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." CAL. CIV. CODE § 52.1(a). The Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). "The Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or

---

[7] Although Plaintiff does not specifically allege in her FAC the officers were not engaged in the performance of their duties, she makes several allegations that strongly imply they were acting beyond their authority. (*See* FAC ¶ 9.)

coercion has been the source of much debate and confusion." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017).  In *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004), the court held that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention."  "A finding of specific intent entails a legal determination that the right at issue be clearly delineated and a factual determination that the defendant acted with the purpose of depriving the plaintiff of enjoyment of that right." *Greer v. County of San Diego*, Case No.: 3:19-CV-0378-GPC-AGS, 2021 WL 615046, at *8 (S.D. Cal. Feb. 17, 2021) (citing *Cornell*, 17 Cal. App. 5th at 801).  The Ninth Circuit has found that (1) "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged," and (2) "the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 799-801).  The court in *Reese* further noted that specific intent to violate a person's constitutional rights may be established by showing the defendant acted with reckless disregard for the person's rights. *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Plaintiff argues "[t]he facts pled in the FAC reflect, at a minimum, the Deputies' reckless disregard of Plaintiff's Fourth Amendment rights" and "the FAC alleges facts that allow the Court to draw the reasonable inference that Defendant Deputies acted in reckless disregard of Plaintiff's Fourth Amendment rights." (Doc. No. 14 at 18.)  In her opposition, however, Plaintiff does not specify any factual allegations that support the deputies' reckless disregard.  Instead, Plaintiff points to her allegations that the deputies "deliberately" subjected her to excessive force, and that the deputies acted with "reckless disregard" for her rights, safety, and emotional well-being. (*Id.*)  These allegations are conclusory and merely recite the elements, as understood by Plaintiff, of a Banes Act

violation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Additionally, Plaintiff's Banes Act claim refers to section 52.1(b), which creates a right of action for the state attorney general, district attorneys, and city attorneys, not for private individuals. Accordingly, regardless of the applicable level of intent, Plaintiff fails to plead a plausible Banes Act violation because, other than incorporating all previous factual allegations, she does not specify any fact that supports the plausibility of her Banes Act claim.[8]

### IV.   CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. The County's motion to dismiss Plaintiff's claims for false arrest under state and federal law is **DENIED**. The County's motion to dismiss Plaintiff's Banes Act claim is **GRANTED**. Plaintiff's request for leave to amend, (Doc. No. 14 at 19), is **GRANTED**. *See* Fed. R. Civ. P. 15(a) (leave to amend "should be freely granted when justice so requires"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[T]he underlying purpose of Rule 15 . . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.") (internal quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (requests for leave should be granted with "extreme liberality"). Plaintiff may file a second amended complaint, should she choose to file one, *within 14 days* of the filing of this order. The County's response to the operative complaint is due *within 21 days* after the expiration of Plaintiff's deadline to file a second amended complaint. *See* Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

DATED: March 10, 2021

JEFFREY T. MILLER
United States District Judge

---

[8] Plaintiff does not contest the County's argument that, pursuant to California Government Code § 815.2(a), the County is not vicariously liable if claims are dismissed against individual employees.